FILED

Sep 18 2019, 8:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Robert P. Harper
Harper & Harper, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General

Dawn Rauch
Certified Legal Intern
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Phillip B. Kress,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 18, 2019

Court of Appeals Case No.
19A-CR-490

Appeal from the Porter Superior
Court

The Honorable Jeffrey W. Clymer,
Judge

Trial Court Cause No.
64D02-1506-F1-4614

**Bailey, Judge.**

# Case Summary

[1] Following a jury trial, Phillip B. Kress ("Kress") was convicted of Child Molesting, as a Level 4 felony.[1] He now appeals. We affirm.

# Issues

[2] Kress raises two issues, which we restate as follows:

> I. Was it error for the trial court to admit certain testimony referring to the victim's out-of-court statements; and

> II. Whether sufficient evidence supports the conviction.

# Facts and Procedural History

[3] The State charged Kress with Child Molesting, as a Level 4 felony. Kress filed a motion in limine, seeking to exclude evidence regarding the course of the investigation as well as repetitive testimony from witnesses other than the alleged victim regarding her out-of-court allegations against Kress. App. Vol. II at 76-77. Kress articulated concerns about relevance and "creating a prejudicial 'drumbeat repetition' of [the] victim's allegation[s] and story." *Id.* at 77. The court ordered that the alleged victim's testimony "must precede any testimony

---

[1] Ind. Code § 35-42-4-3(b).

from other witnesses" regarding the allegations. *Id.* at 81. The court also ordered that the testimony "may not include 'vouching' testimony." *Id.*

[4] Kress was brought to trial in October 2017. The first witness was H.K., the eight-year-old daughter of Kress and Melissa McNorton ("McNorton"). H.K. testified about spending the night at Kress's house when she was five years old. At that time, H.K. lived with McNorton and saw Kress a couple of times each month. H.K. testified that, around bedtime, she was lying in a bed next to Kress while her sister was asleep on a separate mattress. H.K. testified that Kress used a green, glowing object to touch H.K.'s "privates" under her clothing. Tr. Vol. II at 105. Kress told H.K. not to tell anyone. Kress also asked H.K. to look at his "private." *Id.* at 106. H.K. declined this request and went to sleep. H.K. later told family members about the contact.

[5] After H.K. testified, the State called McNorton as its next witness. Kress sought a bench conference, at which he asserted the State was "just going to start calling in . . . witness after witness to say the child told them something." *Id.* Kress objected, claiming this practice "is a form of vouching." *Id.* at 117. The trial court agreed there could be a vouching issue with "people saying the same thing," but the court would "have to wait and see what the State does." *Id* at 118. The State then questioned McNorton, eliciting testimony that H.K. last went to Kress's house for an overnight visit on January 2, 2015. McNorton testified that when H.K. later learned she would soon see Kress, H.K. "told" her grandfather. *Id.* at 125. McNorton testified she also had a conversation with H.K., and relayed H.K.'s allegations to the police. The State asked

whether, in reporting the allegations, McNorton added to or subtracted from what H.K. had said. Kress objected, arguing some background testimony had been admissible, but the State could not keep referring to the victim's out-of-court allegations: "[McNorton] said she got a statement, she told the police, that should be the end of it." *Id.* at 127. The court overruled the objection, and McNorton testified that she told the police "what [H.K.] said." *Id.* at 128.

[6] Before calling its next witness, the State brought up the objection to vouching, acknowledging Kress's concerns about "bringing in a string of witnesses" to refer to the out-of-court allegations. *Id.* at 135. The State said it did not intend to elicit testimony about H.K.'s specific out-of-court allegations, but that general testimony referring to those allegations had "important foundational information timing-wise" concerning "how this disclosure came out versus when it is alleged to have happened." *Id.*at 136. At that point, Kress lodged a continuing objection to further testimony referring to H.K.'s allegations.

[7] The State then elicited testimony from H.K.'s grandfather, who said he had a conversation with H.K. related to the reason for the trial. He testified the conversation led him to bring H.K. to McNorton and have H.K. repeat "what she said." *Id.* at 140. He further testified he told McNorton that they "need[ed] to report this." *Id.* at 141. He conducted online research concerning where to make the report, and eventually spoke with the police the following morning.

[8] There was also testimony from a detective who described his investigation, noting there was a report of "child abuse," *id.* at 158, and that he coordinated

interviews about the "alleged abuse," *id.* at 159.  The detective also testified about the date of the "allegation," *id.*, mentioning police learned "the disclosure would have happened approximately six weeks after the incident, which is pretty fast," *id.* at 160.  The detective testified that he prepared a report and presented it to the State, and that a charge was drawn from that report.

[9]     The jury found Kress guilty of the Level 4 felony offense, for which Kress was sentenced to ten years in the Indiana Department of Correction.

[10]    Kress now appeals.

# Discussion and Decision

## Admission of Evidence

[11]    "The trial court has broad discretion to rule on the admissibility of evidence." *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017).  We review evidentiary rulings for an abuse of discretion, which occurs when the ruling is clearly against the logic and effect of the facts and circumstances.  *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014).  Moreover, we may affirm an evidentiary ruling on any theory supported by the evidence.  *Satterfield v. State*, 33 N.E.3d 344, 352 (Ind. 2015).

[12]    Directing us to testimony from (1) McNorton, (2) the grandfather, and (3) the detective, Kress argues testimony referring to H.K.'s out-of-court allegations constitutes hearsay.  Hearsay—which is generally inadmissible—is an out-of-court statement offered to prove the truth of the matter asserted.  Ind. Evidence Rule 801(c); 802.  Kress argues "the only reason for the State to offer the

statements was to bolster H.K.'s in-court testimony about abuse" and "establish the truth of the out-of-court allegations." Br. of Appellant at 13. Kress further argues that "[a]ll of this testimony, at the very least, carried the very strong implication that H.K. made an out-of-court statement that [Kress] abused her." *Id.* In response, the State does not appear to dispute that the challenged testimony referred to H.K.'s out-of-court assertions, and that the testimony would be inadmissible if offered to prove the truth of the matter asserted. The State contends the testimony was admissible because it was offered for other purposes: "to establish a timeline," "to explain the justification for cancelling future visits between H.K. and Kress," and "to provide a foundation for why the detective prepared a report and gave it to the State." Br. of Appellee at 14.

[13] In a criminal case, "[t]he core issue at trial is, of course, what the defendant did (or did not do), not why [someone else] did (or did not do) something." *Blount*, 22 N.E.3d at 565 (emphasis removed). For this reason, the Indiana Supreme Court has urged courts to take caution when a prosecutor offers an otherwise-inadmissible assertion for the purpose of providing context for the jury. *See id.* at 565-67. Indeed, when an out-of-court assertion is offered for some ancillary purpose, "we must pay careful attention" to that proffered purpose. *Id.* at 566. This is because Indiana Evidence Rule 403 contemplates exclusion where the probative value of the evidence is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Evid. R. 403; *see also Blount*, 22 N.E.3d at 565 (noting course-of-investigation testimony "is of little value absent

a direct challenge to the legitimacy of the investigation"). In short, Indiana law does not permit minimally probative end runs around the rule against hearsay. *See Blount*, 22 N.E.3d at 565. Thus, "[i]f the fact sought to be proved under the [proffered] non-hearsay purpose is not relevant, or it is relevant but its danger of unfair prejudice substantially outweighs its probative value, the hearsay objection should be sustained." *Craig v. State*, 630 N.E.2d 207, 211 (Ind. 1994).

[14] One danger of prejudice arises in the "drumbeat repetition" of an out-of-court assertion. *See, e.g.*, *Modesitt v. State*, 578 N.E.2d 649, 651-52 (Ind. 1991). Indeed, in light of a proffered non-hearsay purpose, exclusion might not be warranted where there is a mere isolated reference to an assertion. *See* Evid. R. 403. However, as additional testimony about the assertion "beats the drum," there is increasing danger the jury will use the testimony for an improper purpose. For example, the jury might use the testimony as proof of the matter asserted. *See, e.g.*, *Blount*, 22 N.E.3d at 568 (suggesting a limiting instruction might avoid this risk). Or, the jury could treat the repetitive testimony as a form of vouching for the credibility of the declarant. *See, e.g.*, *Modesitt*, 578 N.E.2d at 651. As to the latter risk, this type of problematic vouching is not the blatant type prohibited by Evidence Rule 704(b)—where a witness directly opines about "the truth or falsity of allegations" or "whether a witness has testified truthfully." Evid. R. 704(b). Rather, the risk is insidious. That is, the repeated references might eventually inundate the jury, leading them toward an inference that witnesses are vouching for the credibility of the declarant. *See, e.g.*, *Stone v. State*, 536 N.E.2d 534, 540 (Ind. Ct. App. 1989) (identifying

impermissible vouching where the victim's credibility "became increasingly unimpeachable as each adult added his or her personal eloquence, maturity, emotion, and professionalism to [the] out-of-court statements"), *trans. denied*.

[15] Kress argues that the challenged testimony constituted unduly prejudicial "drumbeat repetition," and that the testimony should have been excluded. Nonetheless, assuming *arguendo* Kress has identified evidentiary error, this Court is obligated to disregard harmless error. *See* Ind. Appellate Rule 66(A) (requiring us to disregard error that does not affect a party's substantial rights). Error is harmless if the conviction is supported by "substantial independent evidence of guilt" satisfying us there is "no substantial likelihood that the questioned evidence contributed to the conviction." *Lafayette v. State*, 917 N.E.2d 660, 666 (Ind. 2009). "Put another way, 'we judge whether the jury's verdict was substantially swayed. If the error had substantial influence, or if one is left in grave doubt, the conviction cannot stand.'" *Williams v. State*, 43 N.E.3d 578, 583 (Ind. 2015) (quoting *Lafayette*, 917 N.E.2d at 666).

[16] Indiana courts have identified reversible error where the challenged testimony repeated the victim's specific allegations. *See, e.g.*, *Kindred v. State*, 973 N.E.2d 1245, 1248-51 (Ind. Ct. App. 2012) (involving repetition of the victim's specific allegations of molestation), *abrogated on other grounds*; *Stone*, 536 N.E.2d at 540 ("The trial court abused its discretion by admitting all seven statements in their entirety. The undue prejudice . . . of repeating [the victim's] out-of-court statement six times far outweighed the probative value of such testimony."). Moreover, the Indiana Supreme Court has expressed particular concern about

eliciting this sort of specific, repetitive testimony before the victim ever testifies. *See Modesitt*, 578 N.E.2d at 651 (noting that "[p]rior to putting the victim on the stand, the victim's veracity had been, in essence, vouchsafed by permitting the three witnesses to repeat" the specific allegations). Here, however, the ruling on the motion in limine prevented the type of testimony warranting reversal in those cases. Indeed, here, H.K. was the first witness to testify and she was subjected to cross-examination. She gave specific, descriptive testimony about the touching. The subsequent witnesses gave only general testimony about the existence of allegations. No subsequent witness delved into H.K.'s version of events. Thus, unlike in other cases, here, the jury heard H.K.'s story just once.

[17] In seeking reversal, Kress claims the case "turned on H.K.'s testimony," and the State did not offer "physical evidence or additional testimonial evidence" to support H.K.'s allegation. Br. of Appellee at 13. We are not unmindful that there is a fine line between impermissible vouching testimony and admissible corroboration testimony—especially where, as here, the case turns on whether the jury found the victim to be credible. However, in light of the general nature of the challenged testimony—which followed H.K.'s specific testimony—we ultimately conclude that there is no substantial likelihood that the challenged testimony contributed to the jury's decision to convict Kress. Any error is harmless. *See, e.g.*, *Surber v. State*, 884 N.E.2d 856, 864 (Ind. Ct. App. 2008) (determining any error was harmless where the victim testified first and the subsequent testimony was "brief, consistent with, and did not elaborate upon" the victim's testimony), *trans. denied.*; *McGrew v. State*, 673 N.E.2d 787, 796

(Ind. Ct. App. 1996) (declining to find reversible error where, although the victim was not the first to testify, the challenged testimony was "brief and consistent with" the victim's later testimony), *summarily aff'd in pertinent part*.

## Sufficiency of Evidence

[18] "A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt." I.C. § 35-41-4-1(a). Here, the State could meet its burden by proving, beyond a reasonable doubt, Kress touched H.K.—a child under the age of fourteen—"with intent to arouse or to satisfy the sexual desires" of either H.K. or Kress. I.C. § 35-42-4-3(b). In reviewing for sufficient evidence, we neither reweigh evidence nor judge credibility of witnesses. *Bowles v. State*, 737 N.E.2d 1150, 1151-52 (Ind. 2000). Moreover, "[w]e view all evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction." *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). We affirm if there is substantial evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). Furthermore, it is well-established that the State can meet its burden through the uncorroborated testimony of a single witness. *Sallee v. State*, 51 N.E.3d 130, 135 (Ind. 2016). This is so "even when that witness is the victim." *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[19] Kress challenges the sufficiency of evidence presented at trial. He does not, however, challenge the sufficiency of evidence that he touched H.K., who was under the age of fourteen—and we discern no deficiency concerning these

elements. Kress instead challenges the sufficiency of evidence that he intended the touching to arouse or to satisfy the sexual desires of either H.K. or Kress. "The intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." *Bowles*, 737 N.E.2d at 1152.

[20] Kress claims the State "did not establish how long the touching lasted" and there was no evidence Kress "touched his own privates or did anything to suggest that he was sexually aroused." Br. of Appellant at 10. Kress argues the State did not "offer the 'glowing thing' into evidence or establish what it was." *Id.* Kress also points out the evidence concerned only a "single incident." *Id.*

[21] We must decline Kress's invitation to reweigh evidence, and instead focus on evidence presented at trial. Here, H.K. testified Kress touched her "privates," under her clothes, with a green, glowing object. H.K. further testified it tickled when Kress touched her in this manner. After touching H.K. with the object, Kress told H.K. not to tell anyone. Kress also asked H.K. to view his "private."

[22] Kress directs us to *J.V. v. State*, wherein this Court affirmed a conviction of Child Molesting, identifying sufficient evidence of sexual intent. 766 N.E.2d 412 (Ind. Ct. App. 2002), *trans. denied*. There, the victim testified he felt a hard object touch his bottom, and heard the defendant say it would only hurt for a little while. *Id.* at 415-416. The victim pulled back the covers, saw the defendant's exposed "privates," and felt a wetness near the area of the touching.

*Id.* at 416.  Kress compares the instant evidence to the evidence in *J.V.*, arguing the evidence of sexual intent was stronger in *J.V.*  However, *J.V.* does not establish a minimum standard of evidence to support a conviction.  We must instead apply our well-established standard of review.  In doing so, we identify sufficient evidence from which a reasonable jury could conclude, beyond a reasonable doubt, Kress intended to arouse his or H.K.'s sexual desires.[2]

[23]   We conclude that sufficient evidence supports the conviction.

[24]   Affirmed.

Najam, J., and May, J., concur.

---

[2] At the close of the State's case-in-chief, Kress moved for judgment on the evidence pursuant to Indiana Trial Rule 50.  He asks that, "[i]n addition to a sufficiency review," we review the denial of that motion.  Br. of Appellant at 9.  A court may grant a Trial Rule 50 motion only "where there is a total absence of evidence on some essential issue or where the evidence is without conflict and susceptible [of] only one inference, an inference favorable to the defendant."  *State v. Goodrich*, 504 N.E.2d 1023, 1024 (Ind. 1987).  For the reasons set forth above, we conclude the court did not err by denying the motion for judgment on the evidence.